## State of Vermont v. Steven J. Petrucelli

[592 A.2d 365]

No. 88-479

Present: Allen, C.J., Gibson, Dooley and Morse, JJ., and Peck, J. (Ret.),
Specially Assigned

Opinion Filed March 22, 1991

Motion for Reargument Denied April 19, 1991

Motion for Stay of Mandate Denied April 30, 1991

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr.*, Defender General, and *Henry Hinton*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Morse, J.** The sole issue in this interlocutory appeal is whether 1 V.S.A. § 214(b)(2) prohibits retroactive application of an amendment to 13 V.S.A. § 4501(c), which lengthened the statute of limitations for sexual assault from three years to six years. We hold that it does not and remand for trial.

On March 27, 1987, the State filed an information charging defendant with two counts of sexual assault of a minor. The alleged offenses occurred in 1983, four years before the information was filed. In 1983, the statute of limitations for sexual assault, then found in 13 V.S.A. § 4501, was three years. In 1985, the statute of limitations was amended, extending the limitation period to six years. 13 V.S.A. § 4501(c). Thus, at the time the limitation period was extended, the original three-year limitation had not yet run out on defendant's alleged offenses.

Defendant filed a motion to dismiss on the ground that 1 V.S.A. § 214(b)(2), prohibiting retroactive application of a statutory amendment, barred his prosecution because the original limitations period of three years had run. The trial court denied defendant's motion to dismiss but granted his motion for permission to file this interlocutory appeal.

1 V.S.A. § 214(b)(2) provides that:

> The amendment or repeal of an act or statutory provision, [except where a penalty is reduced], shall not . . . [a]ffect any right, privilege, obligation or liability acquired, accrued or incurred prior to the effective date of the amendment or repeal . . . .

The issue is whether a criminal defendant acquires a "right, privilege, obligation or liability" under the statute of limitations in effect at the time of the offense.

Other states examining the issue have declined to find that criminal defendants acquire, at the time of an alleged offense, a right to the statute of limitations then in effect. See, e.g., *State v. Nagle*, 226 N.J. Super. 513, 545 A.2d 182 (App. Div. 1988); *Commonwealth v. Johnson*, 520 Pa. 165, 553 A.2d 897 (1989); *State v. Hodgson*, 108 Wash. 2d 662, 740 P.2d 848 (1987). In *Johnson*, the court explained that, when a statute of limitations was lengthened before the original time period had run against a defendant, the defendant

> "acquired no *right* to an acquittal on that ground. . . . [A]n act of limitation is an act of grace purely on the part of the legislature. . . . The state makes no *contract* with criminals, at the time of the passage of an act of limitation, that they shall have immunity from punishment if not prosecuted within the statutory period. Such enactments are measures of public policy only. They are entirely subject to the mere will of the legislative power, and may be changed or repealed altogether, as that power may see fit to declare."

520 Pa. at 169, 553 A.2d at 899 (quoting *Commonwealth v. Duffy*, 96 Pa. 506, 514 (1880)) (emphasis in original). See also *id.* at 170, 553 A.2d at 900 (citing cases from other jurisdictions).

In distinguishing the extension of a statute of limitations that has not expired from one that has, Judge Learned Hand wrote:

> Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The ques-

> tion turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it.

*Falter v. United States*, 23 F.2d 420, 425–26 (2d Cir. 1928).

The cases are in accord that a wrongdoer may accrue or acquire a right to escape prosecution only after the statute of limitations in effect at the time of the offense has run and not before.

■ Here the statute of limitations in effect at the time of the offense had not run against defendant when it was amended and lengthened; he had no "right" that could be affected by the change in the limitations period. Likewise, as a criminal defendant, he had no "privilege" or "obligation" that could be affected by such a change. Consequently, 1 V.S.A. § 214(b)(2) simply does not apply.

Defendant points to *State v. Matthews*, 131 Vt. 521, 524, 310 A.2d 17, 20 (1973), where, construing 1 V.S.A. § 214(b)(3), we held that criminal "liability" is incurred at the time the offense is committed. This holding, however, does not help defendant. In *Matthews*, we held that § 214 is a "saving clause," intended to reverse the common-law rule that, when a criminal statute is repealed, all prosecutions that were initiated under the statute but had not reached a final disposition were abated. *Id.* at 523, 310 A.2d at 19. As a result of the saving clause, a criminal irrevocably incurs liability at the time of the offense: not even the repeal of the statute imposing that liability affects that liability. The wrongdoer remains forever liable. A change in the statute of limitations likewise cannot "affect" defendant's liability. Rather, once the statute of limitations in effect at the time of the alleged offense runs out—without being extended—a criminal, by grace of the legislature, is granted a right to be free of prosecution despite continuing liability. For a criminal wrongdoer, the attaching of rights and liabilities occur at different times. Liability is fixed at the time of the offense, but the right to freedom from prosecution is fixed at the time the statute of limitations in effect runs out.

Our interpretation of § 214(b)(2) is not contrary to the well-established rule that new criminal legislation has only prospective application. It is merely the converse of the proposition that a person without constructive notice that certain behavior is unlawful cannot be punished by a law enacted afterward. A person who has lawful notice that certain activity is proscribed incurs liability upon the doing of it. In this sense, the state of the substantive criminal law at the time of the offense is critical for determining liability.

Finally, defendant argues that *Stewart v. Darrow*, 141 Vt. 248, 448 A.2d 788 (1982), makes the statute of limitations in effect at the time the crime is committed govern. In *Stewart*, to the extent that § 214(b)(2) was addressed, the Court concluded that an amendment to a statute of limitations cannot be applied retroactively if it affects a "right." 141 Vt. at 252, 448 A.2d at 790. This decision, however, does not contradict *Matthews*.

We distinguish *Stewart* because dissimilar policies are at work in the criminal and civil fields. In the civil context, statutes of limitation represent complex balancing between a plaintiff's interest in a meaningful opportunity to achieve a remedy and a defendant's interest in finality—a balance evidenced, for example, by the discovery rule and the rule of repose. See *Lillicrap v. Martin*, 156 Vt. 165, 591 A.2d 41 (1989). On the other hand, when a crime is committed, there is no discovery rule, but the balance between the defendant's and State's (or victim's) interests may be adjusted through legislative lengthening of the statute of limitations.

Moreover, in the civil context, particularly in the field of tort law, risk-spreading devices, such as insurance, require some reasonable measure of predictability. Although tortfeasors, as a class, have a legitimate economic stake in predicting the period of potential liability—a stake ultimately shared by plaintiffs, as a class, to the extent that their remedies are delivered by insurers—criminal wrongdoers have no comparable stake, at least not in any sense society would define as legitimate. As discussed previously, criminal liability is ongoing and a criminal wrongdoer has no right to avoid prosecution until the most recent statute of limitations has run.

*The certified question is answered in the negative.*