NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 68

No. 2019-097

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Criminal Division |
| | |
| Matthew S. Hinton | March Term, 2020 |

Thomas A. Zonay, J.

Rosemary Kennedy, Rutland County State's Attorney, and L. Raymond Sun, Deputy State's
  Attorney, Rutland, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, and Sarah Star, Appellate Defender, Montpelier, for
  Defendant-Appellant.

PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.   **COHEN, J.**   Defendant Matthew Hinton appeals the superior court's sentence following his guilty plea to escaping from furlough. Defendant argues that new legislation decriminalizing the conduct should be applied retroactively to him. Separately, he maintains that the court abused its discretion when it ordered the sentence to run consecutively to two other sentences. We affirm.

¶ 2.   In 2015, defendant was under the supervision of the Department of Corrections (DOC) when he escaped from furlough and burglarized several homes in Addison County. He was subsequently arrested and found in possession of a firearm. From these acts emerged three sets of charges: In the superior court, the State charged defendant with one count of escape from

furlough under 13 V.S.A. § 1501(b)(2) in the Rutland Criminal Division, and with three counts of burglary in the Addison Criminal Division. In the U.S. District Court for the District of Vermont, the United States charged him with being a felon in possession of a firearm.

¶ 3.     In 2018, the Addison Criminal Division sentenced defendant to four to ten years' imprisonment on the burglary charges. The same year, the U.S. District Court sentenced him to seven years' imprisonment and three years of supervised release, concurrent to the state sentence. Defendant then pled guilty to the escape charge and, on March 7, 2019, the Rutland Criminal Division entered a judgment of guilty and sentenced him to four to five years' imprisonment, consecutive to the Addison and federal sentences. Defendant timely appealed the Rutland sentence.

¶ 4.     Effective July 1, 2019, during the pendency of this appeal, the Legislature decriminalized the conduct giving rise to defendant's escape conviction. See 2019, No. 77, §§ 10, 26. The law now authorizes the DOC to issue an arrest warrant for a person who absconds from certain types of furlough and provides that "[a] person for whom an arrest warrant is issued . . . shall not earn credit toward service of his or her sentence for any days that the warrant is outstanding." Id. § 11 (codified as amended at 28 V.S.A. § 808e).

¶ 5.     Defendant argues that the escape sentence should be vacated because the new legislation, enacted while his case was on direct appeal, should be applied retroactively to him. Alternatively, he contends that the sentence, imposed consecutively to the other two sentences, must be vacated as an abuse of discretion. We reject both arguments in turn.

## I.  Retroactivity

¶ 6.     We address the retroactivity argument for the first time on appeal because the new legislation did not go into effect until after the filing of this appeal and accordingly defendant could not have raised the issue before the trial court. See State v. Aubuchon, 2014 VT 12, ¶ 10, 195 Vt. 571, 90 A.3d 914.

2

¶ 7.    Defendant first relies on a line of cases holding that judicial decisions announcing new constitutional rules apply retroactively to cases on direct review.  See, e.g., State v. White, 2007 VT 113, ¶¶ 8-9, 182 Vt. 510, 944 A.2d 203; State v. Shattuck, 141 Vt. 523, 528-29, 450 A.2d 1122, 1124-25 (1982).  Those cases are traceable to the broader common-law rule "that a change in law will be given effect while a case is on direct review."  Shattuck, 141 Vt. at 529, 450 A.2d at 1125 (quotation omitted).  Defendant's reliance on those authorities is misplaced.

¶ 8.    We have explained that "[at] common law, the repeal of a criminal statute abated all prosecutions which had not reached final disposition" and that "[t]o avoid such results, legislatures frequently indicated an intention not to abate pending prosecutions by including in the repealing statute a specific clause stating that prosecutions of offenses under the repealed statute were not to be abated."  State v. Matthews, 131 Vt. 521, 523, 310 A.2d 17, 19 (1973).  In the nineteenth century, however, Vermont and other jurisdictions adopted "saving clauses"—statutes that "save" from amendment or repeal, "all statutory rights and penalties created by a completed set of factual circumstances."  Id. at 524, 310 A.2d at 20.  Thus, it is settled that Vermont's saving statute, 1 V.S.A. § 214, was adopted to abandon the common-law rule of retroactivity for new legislation.  See State v. Petrucelli, 156 Vt. 382, 384, 592 A.2d 365, 366 (1991).  Consequently, the saving statute controls this case, not the common law or authorities governing the retroactivity of judicial decisions.

¶ 9.    In § 214, the Legislature declared:

> The amendment or repeal of an act or statutory provision, except as provided in subsection (c) of this section, shall not . . . affect any violation of the act or provision amended or repealed, or any penalty or forfeiture incurred thereunder, prior to the effective date of the amendment or repeal . . . .

1 V.S.A. § 214(b)(3).  Accordingly, the general rule is that statutory amendments or repeals only apply prospectively.  See also Aubuchon, 2014 VT 12, ¶ 16 ("Generally, statutes operate only prospectively, while judicial decisions operate retrospectively." (quotation omitted)); Petrucelli,

3

156 Vt. at 385, 592 A.2d at 366 (observing "well-established rule that new criminal legislation has only prospective application"). As an exception to this general rule, § 214(c) provides that "[i]f the penalty or punishment for any offense is reduced by the amendment of an act or statutory provision, the same shall be imposed in accordance with the act or provision as amended unless imposed prior to the date of the amendment." 1 V.S.A. § 214(c). We have held that subsection (c) is a narrow exception that applies only to a statutory amendment that reduces the penalty or punishment for an offense, see State v. Lapan, 158 Vt. 382, 386, 609 A.2d 970, 972 (1992) (distinguishing amendment from repeal); State v. Barron, 2011 VT 2, ¶ 38, 189 Vt. 193, 16 A.3d 620 (distinguishing reduction in punishment from redefinition of offense), and we have adopted a test to determine when those conditions are present, see State v. Flagg, 160 Vt. 141, 144, 624 A.2d 864, 866 (1993).[1]

¶ 10.    An initial reading of § 214(c) suggests that the new legislation does not apply to defendant because the trial court sentenced him and entered judgment "prior to the date of the amendment." 1 V.S.A. § 214(c). But pointing to the common law, defendant argues that under § 214(c), a sentence is not "imposed" until resolution of a direct appeal.

¶ 11.    Our goal in interpreting a statute is to identify and implement the Legislature's intent. State v. Davis, 2020 VT 20, ¶ 47, __ Vt. __, __ A.3d __. "We presume that the plain, ordinary meaning of statutory language is intended." State v. Harty, 147 Vt. 400, 402, 518 A.2d 30, 31 (1986). "If the plain language is clear and unambiguous, we enforce the statute according to its terms." State v. Blake, 2017 VT 68, ¶ 8, 205 Vt. 265, 174 A.3d 126 (quotation omitted). Statutes governing the same subject matter are read together, "because a proper interpretation must

---

[1] Given our disposition of defendant's argument, we assume without deciding that Act 77 effected an amendment reducing the penalty or punishment for escaping from furlough, rather than a repeal or redefinition of the offense.

further the entire statutory scheme." Wool v. Office of Prof'l Regulation, 2020 VT 44, ¶ 22, __ Vt. __, __ A.3d __ (quotation omitted).

¶ 12.    Defendant's reading of § 214(c) is inconsistent with the plain, ordinary meaning of the word imposed. "Imposing a sentence" naturally connotes a trial court sentencing a defendant after an adjudication of guilt, not an appellate court disposing of an appeal. This interpretation is supported by our case law, the law of other jurisdictions, and the Legislature's use of the word "impose" in other statutes governing sentencing.

¶ 13.    On at least three occasions, this Court has applied the pre-amendment version of a statute where the trial court pronounced sentence prior to the statutory amendment. See State v. Aubuchon, 2014 VT 12, ¶ 12 (applying pre-amendment version of statute among other reasons because defendant was sentenced prior to amendment); State v. LeClair, 2013 VT 114, ¶ 6 n.*, 195 Vt. 295, 88 A.3d 1186 (same), superseded on other grounds by statute, 2013, No. 4, § 1, as recognized in Aubuchon, 2014 VT 12, ¶ 12; State v. Barron, 2011 VT 2, ¶ 38, 189 Vt. 193, 16 A.3d 620 (same).[2]  In Barron, we specifically used the plain meaning of the word "imposed." There, the trial court sentenced the defendant before the statute was amended and we rejected defendant's argument that the new version of the statute controlled. 2011 VT 2, ¶¶ 36, 38. We held that "§ 214(c) operates as defendant suggests only if the sentence is not imposed 'prior to the date of the amendment,' " and that "[t]he sentence at issue . . . was imposed prior to the date of the amendment." Id. ¶ 38.

¶ 14.    Our reading of § 214(c) is consistent with the Legislature's use of the word impose in two subsections of 13 V.S.A. § 7042, which also relate to sentencing. Subsection (a) provides that a court "imposing a sentence . . ., within 90 days of the imposition of that sentence, or within 90 days after entry of any order or judgment of the Supreme Court upholding a judgment of

---

[2]  Although these authorities are persuasive in resolving the issue before us, they are not dispositive because they did not consider the argument defendant raises here.

conviction, may upon its own initiative or motion of the defendant, reduce the sentence." Id. § 7042(a). This provision would make no sense if we read "imposing a sentence" as the point when this Court disposes of a direct appeal. The Legislature clearly drew a distinction between a "court imposing a sentence" and the Supreme Court upholding a judgment on appeal. Indeed, in State v. Therrien, we held that under § 7042(a), "the sentence is considered to be imposed at the time of the original sentencing." 140 Vt. 625, 626-27, 442 A.2d 1299, 1300-01 (1982) (per curiam). In addition, subsection (b) declares that prosecutors, "within seven business days of the imposition of a sentence, may file with the sentencing judge a motion to increase, reduce, or otherwise modify the sentence." 13 V.S.A. § 7042(b). Although the meaning of "impose" is less clear in this subsection than in subsection (a), it would be anomalous to find that the Legislature used the same word with different meanings in two subsections of the same statute. See Envtl. Def. v. Duke Energy Corp., 549 U.S. 561, 574 (2007) (discussing rebuttable presumption "that the same term has the same meaning when it occurs here and there in a single statute"). The Legislature's use of the word impose in § 7042 is evidence that it intended the same meaning in § 214(c). See In re Judy Ann's Inc., 143 Vt. 228, 231, 464 A.2d 752, 754 (1983) (noting that in determining legislative intent, it is helpful to review "totality of legislative action on a subject").

¶ 15.   Our plain-language reading of § 214(c) is also consonant with case law from other jurisdictions. See, e.g., United States v. Cruz-Rivera, 954 F.3d 410, 413 (1st Cir. 2020) (observing that "[a] sentence is customarily understood to be imposed either when it is pronounced or entered in the trial court, regardless of subsequent appeals" (quotation omitted)); United States v. Richardson, 948 F.3d 733, 748 (6th Cir. 2020) ("In the general context of criminal sentencing, a sentence is 'imposed' when the trial court announces it, not when the defendant has exhausted his appeals from the trial court's judgment."); United States v. Pierson, 925 F.3d 913, 928 (7th Cir. 2019) (holding that "[s]entence was 'imposed' . . . when the district court sentenced the defendant, regardless of whether he appealed a sentence that was consistent with applicable law at [the] time

6

it was imposed"), judgment vacated on other grounds by 140 S. Ct. 1291, __ U.S. __ (2020) (mem.); United States v. Aviles, 938 F.3d 503, 510 (3d Cir. 2019) (" 'Imposing' sentences is the business of district courts, while courts of appeals are tasked with reviewing them by either affirming or vacating them."); State v. Ditmars, 567 P.2d 17, 19 (Idaho 1977) (agreeing that "[t]he imposition of a sentence means laying the sentence upon the defendant, that is, the act of sentencing him" (quotation omitted)); State v. Heide, 822 P.2d 59, 64 (Kan. 1991) ("Sentence is imposed . . . when pronounced by the trial judge."). These cases support our view that the plain meaning of imposing a sentence is an action by the trial court, irrespective of appeal.

¶ 16.    Against the weight of these authorities, defendant offers United States v. Clark, 110 F.3d 15 (6th Cir. 1997) superseded on other grounds as provided in United States v. Coats, 530 F. App'x 553, 556 (6th Cir. 2013). In Clark, after the defendant was sentenced, but before disposition of her appeal, Congress enacted a safety-valve statute relieving certain drug offenders from mandatory minimum sentences. The statute applied "to all sentences imposed on or after the date of enactment." Id. at 17 (quotation omitted). Clark argued that she had to be resentenced under the new law because her case was pending on appeal when the law was enacted. The Sixth Circuit agreed, relying on the remedial intent of the statute and the law's purpose statement, which suggested that it should receive "broad application." Id. The Court also reasoned that "[a] case is not yet final when it is pending on appeal" and that Clark's initial sentence had not been "finally 'imposed' within the meaning of the safety valve statute because it is the function of the appellate court to make it final after review." Id.

¶ 17.    We respectfully find Clark unpersuasive for the same reasons it was jettisoned by the Sixth Circuit and rejected by other federal courts of appeals. In Richardson, the Sixth Circuit rejected the same argument made in Clark and held that "an appeal follows the imposition of a sentence; it is not part of it." Richardson, 948 F.3d at 748-49. The Court observed that Clark was "concerned with the concept of finality and when a sentence was 'finally' imposed rather than

7

simply imposed." Id. at 751. Section 214(c) is silent on finality. See 1 V.S.A. § 214(c). Had the Legislature intended § 214(c) to apply when a sentence is "finally imposed," it would have been easy to so state. See Wool, 2020 VT 44, ¶ 23 (finding some evidence of Legislature's intent in legislative silence). More importantly, Richardson questioned Clark's holding that "[a] case is not yet final when it is pending on appeal," and cited U.S. Supreme Court and circuit precedent holding that a district court's sentence is a final judgment. See Richardson, 948 F.3d at 752-53. Our state law is to similar effect. See State v. Merchant, 173 Vt. 249, 253, 790 A.2d 386, 390 (2001) (holding that "entry of judgment after sentencing constitutes final judgment"). In fact, except for interlocutory appeals, a final judgment is generally necessary for appellate review. See State v. Haynes, 2019 VT 44, ¶ 12, __ Vt. __, 215 A.3d 1094 (per curiam). It would be incongruous to hold that a sentence is not final until an appeal is resolved, when finality is a prerequisite to appellate review. Other courts of appeals have similarly rejected Clark's reasoning. See, e.g., Pierson, 925 F.3d at 928 (declining to adopt Clark and observing that "no other circuits have applied Clark's definition of 'imposed' "); Cruz-Rivera, 954 F.3d at 412 (rejecting Clark reasoning); Aviles, 938 F.3d at 510 (same).

¶ 18. Additionally, Richardson observed that given Clark's focus on the amendment's purpose suggesting congressional intent for broad application, rather than the statutory text, "Clark carries less force as applied to other statutes." Richardson, 948 F.3d at 752. We agree and find no similar evidence of legislative intent to give the furlough amendment broad application in the Clark sense. Had the Legislature intended to apply the furlough amendment as broadly as possible, it could have made the amendment retroactive, instead of relying on the limited retroactivity of § 214(c). Its choice not to do so further undercuts the persuasiveness of Clark to the issue before us.

¶ 19. In sum, we hold that under 1 V.S.A. § 214(c), a sentence is imposed by the superior court upon sentencing or entry of judgment.[3] Finding the statute's language clear and unambiguous, we enforce it according to its terms. Because the superior court sentenced defendant and entered judgment prior to the amendment in the law, he was properly sentenced under the previous version of the statute. We thus turn to defendant's argument that imposing the sentence consecutively to the Addison County and federal sentences was an abuse of discretion.

## II. Review of Sentence for Abuse of Discretion

¶ 20. Defendant argues that the consecutive sentence only delayed rehabilitation, and that it was wholly punitive because it will not deter defendant or other members of the public given that the conduct has been decriminalized. The State counters that the sentence was within statutory parameters and proportionate to the seriousness of defendant's behavior. It also observes that the sentence deters defendant and other members of the public from engaging in new criminal behavior generally, not just the specific conduct of escaping from furlough.

¶ 21. Vermont follows a situational sentencing scheme requiring the trial court to tailor the punishment within the statutory range to fit the defendant. State v. Lumumba, 2014 VT 85, ¶ 23, 197 Vt. 315, 104 A.3d 627. In doing so, the court must consider several factors, including "the nature and circumstances of the crime, the history and character of the defendant, the need for treatment, and the risk to self, others, and the community at large presented by the defendant." 13 V.S.A. § 7030(a). The court has wide discretion in sentencing, and our review is accordingly limited to whether it abused its discretion. Lumumba, 2014 VT 85, ¶¶ 22-23. "Absent exceptional circumstances, we will defer to the court's judgment so long as the sentence is within the statutory

---

[3] Because here the court sentenced defendant and entered judgment on the same day, we reserve for another day the question of whether, for purposes of § 214(c), a sentence is imposed when the trial court sentences the defendant or when it enters judgment when a remedial statute is enacted after sentencing but before the entry of judgment.

limits and was not based on improper or inaccurate information." State v. Daley, 2006 VT 5, ¶ 6, 179 Vt. 589, 892 A.2d 244.

¶ 22. Defendant was charged with escape from furlough under 13 V.S.A. § 1501(b)(2), which carried a maximum penalty of five years' imprisonment. Id.; 2019, No. 77, § 10. Because defendant had prior convictions, he was charged as a habitual offender under 13 V.S.A. § 11, which exposed him to life imprisonment. As noted, the court sentenced him to four to five years' imprisonment consecutive to the Addison and federal sentences, which ran concurrent to each other, and the longest of which was seven years' imprisonment and three years of supervised release.

¶ 23. Consecutive sentences are authorized under 13 V.S.A. § 7032 and the sentence fell well within the statutory limits. At the sentencing hearing, the court considered multiple factors, including the nature and circumstances of the crime; defendant's criminal history, which included thirteen prior convictions, two of them prior escapes; defendant's mental-health and substance-abuse issues; defendant's acceptance of responsibility; and defendant's positive character traits as detailed by members of his family. On the record, the court weighed the goals of ensuring public safety, specific and general deterrence, rehabilitation, and punishment. The court considered the Addison and federal sentences, and defendant's request for a concurrent sentence, but ultimately rejected the request, observing that a concurrent sentence would not satisfy the need for punishment. The court engaged in a thorough analysis, considered defendant's specific situation, and acted within its discretion.

¶ 24. Defendant argues that he could have received programming on federal supervised release after he served the seven-year portion of the federal sentence, but by adding an additional four to five years of incarceration, the court delayed rehabilitation. The court was aware that its sentence would delay the federal rehabilitation programs but noted that some rehabilitative

programs are available while incarcerated and that in any event public safety warranted the delay. This does not constitute an abuse of discretion.

¶ 25.    Finally, defendant argues that the sentence serves no deterrent purpose because the conduct has been decriminalized.  As noted, the decriminalization occurred months after the court sentenced defendant.  Given the chronology of events and our limited standard of review, the court did not abuse its discretion in not considering a fact that did not exist at the time of sentencing. Defendant can raise this argument with the trial court by filing a motion to review the sentence under 13 V.S.A. § 7042(a) within ninety days of this opinion.  In considering such a motion, the trial court should assess the effect of decriminalization on the deterrent purpose of defendant's sentence, and, if appropriate, resentence accordingly.

Affirmed.

FOR THE COURT:

_____
Associate Justice

11